**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JULIO MELECIO,

                              Plaintiff,

                - v -                                    Civ. No. 9:10-CV-289
                                                              (FJS/RFT)
                                                          LEAD CASE

BRIAN FISCHER, *New York State Commissioner of Corr.*;
JERRY JANIEC, *Inmate Grievance Program Supervisor of
Greene Corr. Facility*; KATHY APPLE, *Business Office Clerk,
Greene Corr. Facility*; MR. WELHELM, *Senior Corr. Counselor,
Greene Corr. Facility*; MR. KROM, *Inmates Account Clerk*;
MR. DIRIE, *Deputy of Security*; MICHAEL GRAZIANO, *Dep.
Superintendent of Admin. Services, Greene Corr. Facility*; MARIE
HAMMOND, *Deputy for Program, Greene Corr. Facility*; JEFF
MCKOY, *Superintendent, Greene Corr. Facility*; MR. GLASSER,
Sgt. at the S.H.U. 200, Greene Corr. Facility*; MR. DOUIGH,
Sgt. at the S.H.U. 200, Greene Corr. Facility*; MR. S. LUCAS,
Corr. Officer, Greene Corr. Facility*; MR. WHITEASH, *Corr.
Officer, Greene Corr. Facility*; MR. D. RAMIREZ, *Corr. Officer,
Greene Corr. Facility*; MR. LEONARDO, *Corr. Officer, Greene
Corr. Facility*; MR. B. JUNE, *Corr. Officer, Greene Corr. Facility*;
MR. D. VINCENT, *Corr. Officer, Greene Corr. Facility*; MS. P.
BUNCH, *Corr. Officer, Greene Corr. Facility*; MS. M. GONZALEZ,
Corr. Officer, Greene Corr. Facility*; MR. MURPHY, *Corr. Officer,
Greene Corr. Facility*; JANE DOE, *Nurse, Admin. Office, Greene
Corr. Facility*; MS. SMITH, *Corr. Doctor, Greene Corr. Facility*;
MS. M. REED, *Corr. R.N., Greene Corr. Facility*; MS. S. DIMICK,
Corr. R.N., Greene Corr. Facility*; MS. S. DERR, *Corr. R.N.,
Greene Corr. Facility*; JANE DOE, *Mail Room Clerk, Greene Corr.
Facility*; MS. A. HORNER, *Corr. Officer, Greene Corr. Facility*,
MR. MAHON, *Corr. Officer, Greene Corr. Facility*; DOUG
BOTSFORD; D. UHLER; MARIO DOUYON DEAZEV; DR. ADAMS;
NANCY SMITH; ELIZABETH WHITE; GERALDINE WILSON;
ROXANNE LECLERC; TRUDY-LYNN CARON; INSPECTOR
GENERAL, *DOCS*; IRUSSO, *Corr. Counselor,*[1]

                              Defendants.

---

[1] In Defendants' Memorandum of Law in support of their Motion to Dismiss, Defendants Welhelm, Douigh, and Irusso are identified as "Wilhelm," "Dough," and "Iarusso," which this Court will now adopt as the proper spelling of these Defendants' names. *See* Dkt. No. 46-2.

JULIO MELECIO,

                              Plaintiff,

              - v -                                           Civ. No. 9:10-CV-470
                                                                    (FJS/RFT)
                                                              MEMBER CASE

GREENE CORR. FACILITY BUSINESS OFFICE CLERK JANE
DOE; INMATE ACCOUNTS OFFICE CLERK JANE DOE;
INMATES GRIEVANCE OFFICE SUPERVISOR JOHN DOE;
DEPUTY OF SECURITY JOHN DOE; SUPERINTENDENT
JOHN DOE; MR. GLASSER; C.O. VINCENT;
COMMISSIONER OF CORRECTIONS; INSPECTOR GENERAL;
CORRECTIONAL COUNSELOR IRUSSO; S. LUCAS;
MR. D. RAMIREZ,

                              Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

JULIO MELECIO
Plaintiff, *Pro Se*
07-A-3977
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. ERIC T. SCHNEIDERMAN              WILLIAM J. MCCARTHY, JR., ESQ.
New York State Attorney General         Assistant Attorney General
Attorney for Defendants[2]
The Capitol
Albany, NY 12224

---

[2] On June 23, 2011, William J. McCarthy, Jr., Esq., filed a Notice of Appearance on behalf of all the Defendants. Dkt. No. 53. On the next day, however, McCarthy filed a Notice of Appearance as to only some of the Defendants, to the exclusion of others. Dkt. No. 54. Because Affidavits of Service have not yet been filed with the Clerk of the Court, we have no way of independently deciphering which Defendants have been properly brought into this action. Regardless, the Attorney General's Memorandum of Law in support of their Motion to Dismiss, filed on February 10, 2011, substantively discusses each Defendant, and, thus, the Court deems that the New York State Attorney General's office has appeared on behalf of all named Defendants, sans unidentified "Doe" Defendants. *See* Dkt. No. 46-2, Defs.' Mem. of Law. We direct the Clerk of the Court to update the docket accordingly.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

Julio Melecio, a New York state prison inmate proceeding *pro se*, commenced this action pursuant to 42 U.S.C. § 1983, alleging that the Defendants retaliated against him for filing grievances, and additionally violated his rights under the Eighth Amendment. Dkt. No. 35, Am. Compl. Defendants now move for dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 46. Plaintiff has not opposed the Motion. For the reasons that follow, it is recommended that Defendants' Motion be **granted** and Plaintiff's Consolidated Amended Complaint be **dismissed** in its entirety.

### I. BACKGROUND

#### A. Procedural Background

As the case captions indicate, *pro se* Plaintiff Melecio brought two separate civil right actions, pursuant to 42 U.S.C. § 1983. On October 1, 2010, Plaintiff moved to amend his Complaint and have his two actions consolidated. Dkt. No. 33. On November 22, 2010, after reviewing the Motion, the proposed Amended Complaint, and the Complaint filed in the second 1983 action, the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, found that the form, substance, and Defendants involved in these two actions were nearly identical and granted Plaintiff's Motion to Amend and Consolidate, with *Melecio v. Fischer et al.*, Civ. No. 9:10-cv-289 (FJS/RFT) designated as the Lead Case. Dkt. No. 34, at pp. 5-7. In granting consolidation, Judge Scullin directed that Melecio's proposed Amended Complaint be filed and deemed the Consolidated Complaint for both the Member Case, 9:10-cv-470, and the Lead Case, 9:10-cv-289. As a consequence, the Consolidated Complaint shall be the operative pleading in this consolidated action

which added the Upstate Defendants as Defendants in the Lead Case.[3]  In essence, there is only one Complaint to which the Defendants need respond to.  Dkt. No. 34 at p. 8; *see also* Dkt. No. 35, Am. Compl.

## B. Facts

The following facts are derived from Plaintiff's Amended Complaint, which, in accordance with the standard of review on a motion to dismiss, must be taken as true.  *See infra* Part II.A.

On January 10, 2010, Plaintiff, who was then housed in the Special Housing Unit ("SHU") at Greene Correctional Facility, asked Defendant Nurse S. Dimick for the medication "Naprosyn."[4] Am. Compl. at ¶ 49.  Defendant Dimick did not respond to Plaintiff's request, and Plaintiff made his request again to Defendants Reed and Derr before finally receiving his medication four days later.  *Id.* at ¶¶ 50-51.  Plaintiff filed a grievance about this incident and addressed a complaint to Defendant Doctor S. Smith  *Id.* at ¶ 52.  Plaintiff claims that Defendant Smith "did nothing to immediately resolve the matter."  *Id.* at ¶ 54.

Sometime "subsequent to these matters," Plaintiff "alerted staff that he had to use the bathroom," but he was ignored and "eventually he urinated in the cell."  *Id.* at ¶¶ 55-56.[5]  Defendant Glasser "har[]assed and threatened [Plaintiff] over this incident."  *Id.* at ¶ 57.  Then, Plaintiff was assaulted on April 21, 2010, "in the draft room at Greene [Correctional Facility], by three corrections officers including [D]efendant A. Horner."  *Id.* at ¶ 58.  Plaintiff filed grievances about both of these incidents.  *Id.* at ¶ 60.

---

[3] We note also that the original Complaint filed with in the Member Case included several Doe Defendants. By his Consolidated Complaint, Plaintiff appears to have identified many of these Defendants.

[4] Plaintiff does not elaborate on what effect Naprosyn has, or what it was prescribed to him for.

[5] Plaintiff does not associate this incident to any Defendant.

Plaintiff states that his internal, incoming, and outgoing mail was "being delayed" and "being tampered with,"[6] and he brought his complaint on the matter to "Mailroom clerk [D]efendant Jane Doe, with no result."  *Id.* at ¶¶ 63-64.  Because of Defendant Jane Doe's "failure to respond or otherwise address this matter," Plaintiff did not receive several copies of his magazine subscriptions. *Id.* at ¶ 65.

At some point, Plaintiff attempted to obtain legal materials from the facility law library, but the officer assigned to that program did not provide him with the materials that Plaintiff requested.[7] *Id.* at ¶ 66.

Plaintiff wrote to Defendant Fischer complaining about these matters, "as well as incidents involving defendant C.O.'s writing [P]laintiff false misbehavior reports."  *Id.* at ¶ 67.  Plaintiff does not provide any more detail about the aforementioned misbehavior reports or Defendant Fischer's involvement, except that Fischer "did not intervene on [P]laintiff's behalf."  *Id.* at ¶ 68.  Plaintiff also wrote letters or spoke to Defendants McKoy, Graziano, Dirie, and Dough about his complaints, but Plaintiff avers they "did nothing more than generate denials from the staff involved," instead of "conducting fair investigations" or reviewing available evidence.  *Id.* at ¶¶ 70-71.  Plaintiff also alleges that Defendant Jerry Janiec, as the inmate grievance supervisor, "used his office to thwart the fair resolution of [Plaintiff]'s claims by avoiding accessing the information that would substantiate his claims."  *Id.* at ¶ 74.

Plaintiff's inmate account was overcharged for legal copies,[8] but Defendants Krom, the

---

[6] Plaintiff does not associate this allegation to any Defendant.

[7] Plaintiff does not identify the name of this officer nor identify him or her as an unnamed Defendant.

[8] Plaintiff does not associate this incident to any Defendant.

inmate accounts clerk, and K. Apple, the business office clerk, "made no effort to address the matter." *Id.* at ¶¶ 72-73.

On May 5, 2010, Plaintiff's personal property in his cell was packed up by Defendant Whiteash in order for Plaintiff to be transferred from Greene Correctional Facility to Upstate Correctional Facility. *Id.* at ¶¶ 79-80. Plaintiff had another bag in addition to his "in-cell" property which was marked with his name, but this bag was lost, and "[P]laintiff contends that this was the result of retaliation for complaints he authored against other staff at Greene." *Id.* at ¶¶ 81-83.

On May 8, 2010, while at Upstate Correctional Facility, Plaintiff placed a sick call request to receive his prescribed medication for lower back pain. *Id.* at ¶¶ 86 & 91-93. His requests were taken from his cell door by medical staff, but he was not seen during sick call the following day "on the claim that he failed to submit a sick call request." *Id.* at ¶ 87. On May 10, 2010, Plaintiff wrote to Defendant Nurse Administrator Nancy Smith to complain that his sick call requests were being ignored and that he was not receiving his prescription medications. *Id.* at ¶ 88. Defendant Smith responded to Plaintiff on June 2, 2010, advising him to "address his concerns during sick call." *Id.* at ¶ 89. Sometime during this period, Defendent Doctor Mario DeAzev "either removed or altered [Plaintiff's] prescribed medications" such that Plaintiff did not receive Diclofenac for his back pain and was left to "languish in excruciating back pain with non-effective over-the-counter Tylenol," which caused Plaintiff's "chronic lower back pain [to be] deeply exacerbated." *Id.* at ¶¶ 90-93. Plaintiff claims this was harassment for retaliatory purposes. *Id.* at ¶ 94.[9]

Plaintiff claims that when he was transferred to Upstate, he was placed in a single-person

---

[9] "Plaintiff had no history with these medical staff at Upstate, as he'd just arrived to the facility a few days before. Thus, there would be no basis for their treatment of him – that is except for retaliatory purposes." Am. Compl. at ¶ 94.

cell, instead of a double-occupancy cell like he had at Greene.  *Id.* at ¶ 95.  He complained to Defendants Botsford, D. Uhler, Roxanne Leclerc, and Trudy-Lyn Caron about being housed in a single person cell, but the Defendants did not "adequately explain why [Plaintiff] was placed in single-cell isolation upon his arrival at Upstate."  *Id.* at ¶¶ 96-97.

Lastly, on August 11 and 12, 2010, Plaintiff again attempted to place a sick call request, but Defendants Elizabeth White and Geraldine Wilson refused to pick up this request.  *Id.* at ¶¶ 99-100.

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original) (quoting *Cortec Indus., Inc. v.*

*Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1960 (citing *Twombly*).[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459

---

[10] By its opinion in *Bell Atl. Corp. v. Twombly* and then again in *Ashcroft v. Iqbal*, the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 563.

U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1950-51.

### B. Eighth Amendment Claims

In his Amended Complaint, Plaintiff states three distinct Eighth Amendment claims: deliberate indifference to his serious medical needs, excessive force, and inhumane conditions of confinement.  We address these allegations *seriatim*.

#### 1. Deliberate Indifference to a Serious Medical Need

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'"  *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish.  *Hathaway v. Coughlin* ("*Hathaway I*"), 37 F.3d 63, 66 (2d Cir. 1994).  Under the objective prong, the alleged medical need must be "sufficiently serious." *Id.*; *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain."  *Chance v. Armstrong*, 143 F.3d at 702 (internal quotation marks and citation omitted).  Among the relevant factors to consider are "[t]he existence of an injury that a reasonable

doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). Under the subjective component, the plaintiff must demonstrate that the defendant acted with "a sufficiently culpable state of mind." *Hathaway I*, 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991).

Reading Plaintiff's Complaint liberally, he seems to claim that he suffers from a chronic back injury. *See* Am. Compl. at ¶¶ 91-93. The existence of a chronic back injury is sufficient to state a serious medical condition. *See*, *e.g.*, *Dobbin v. Artuz*, 143 F. Supp. 2d 292, 302 (S.D.N.Y. 2001) (noting that an inmate's chronic back injury satisfies the objective prong of a deliberate indifferent claim). However, Plaintiff fails to allege that the Defendants denied him medical care with the requisite culpable state of mind for a finding of deliberate indifference. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.1996) (citing *Farmer*).

Plaintiff alleges that he was denied medication for four days when Defendant Nurse Dimick did not respond to Plaintiff's request for the medication "Naprosyn," and it was not until he made his request to Defendants Reed and Derr that he received that medication. Am. Compl. at ¶¶ 49-51. Plaintiff also states that his sick call requests were ignored while at Upstate Correctional Facility, on May 8, 2010, though Plaintiff does not identify by whom, and again on August 11 and 12, 2010,

by Defendants White and Wilson.  *Id.* at ¶¶ 86 & 99-100.  He does not allege any facts whatsoever by which this Court could find that Defendants "acted with reckless disregard to a known substantial risk of harm."  While a four-day deprivation of medicine, or a failure to recognize requests for sick call, might be considered negligent conduct under certain circumstances, that finding is not sufficient to state an Eighth Amendment claim.  *Estelle v. Gamble*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996) ("Mere negligence or inadvertent failure . . . is not a constitutional violation, however.  'Deliberate indifference' must be demonstrated by proof that corrections personnel intentionally denied, delayed access to, or interfered with prescribed treatment.").

Finally, Plaintiff claims that Defendent Doctor DeAzev "either removed or altered" Plaintiff's prescription for "Diclofenac" such that Plaintiff received only Tylenol instead.  Am. Compl. at ¶¶ 90-92.  These facts do not support a finding that Defendant DeAzev was subjectively deliberately indifferent to Plaintiff's medical needs, or that Defendant DeAzev bore Plaintiff any ill will at all.  Instead, it evinces mere disagreement over the prescribed course of treatment, which does not support a finding of deliberate indifference.  *See Brown v. Eagen*, 2009 WL 815724, at *9 (N.D.N.Y. Mar. 26, 2009) (stating that the prison officials have broad discretion to determine the nature and character of the medical treatment afforded to inmates, as "[a]n inmate does not have the right to treatment of his choice") (citing, *inter alia*, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)).  Additionally, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to

*-11-*

act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'"
*Chance v. Armstrong*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin* ("*Hathaway II*"), 99 F.3d
550, 553 (2d Cir.1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations
omitted).

Therefore, Plaintiff's claim that the Defendants were deliberately indifferent to his serious
medical needs should be **dismissed**.

### 2. *Excessive Force*

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. *Robinson
v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane*, 338 F.3d 155, 161 (2d Cir.
2003)). To determine whether an Eighth Amendment violation occurred where "prison officials
stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments
Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain
or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S.
1, 6-7 (1992) (quoted in *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)). To validly assert an
Eighth Amendment violation through the use of excessive force, an inmate must state (1)
objectively, that the defendant's actions violated "contemporary standards of decency," and (2)
subjectively, that the defendant acted wantonly and in bad faith. *Blyden v. Mancusi*, 186 F.3d 252,
262-63 (2d Cir. 1999) (internal quotations and citations omitted).

Plaintiff asserts that he was assaulted by three correctional officers, including Defendant
Horner. Am. Compl. at ¶ 58. Besides stating that the event occurred on April 21, 2010, and that it
happened "in the draft room" at Greene Correctional Facility, he does not state any other facts about
this incident. He does not describe how the assault happened, what the Correction Officers did to

-12-

purportedly assault him, or the nature of any injures he suffered.  Clearly, Plaintiff does not allege enough facts to state a claim for relief that is plausible on its face.

Defendants do not specifically contest Plaintiff's assault claim against Defendant Horner. *See* Dkt. No. 46-2, Defs.' Mem. of Law, at p. 1 n.1.  However, under 28 U.S.C. § 1915A, in "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employees of a governmental agency," this Court must "dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]" 28 U.S.C. §§ 1915A(a) & (b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*).  Accordingly, Plaintiff's claim that he was assaulted by Defendant Horner and other unknown correctional officers should be **dismissed**.

Additionally, Plaintiff alleges that he was harassed by staff at both Greene and Upstate Correctional Facilities, including a claim that Defendant Glasser "harrased [sic] and threatened" Plaintiff.  *See* Am. Compl. at ¶¶ 55, 57, 60, & 85.  Plaintiff alleges no details nor surrounding facts by which this Court could evaluate his claims of harassment, and, thus, they should be **dismissed** for failing to state a claim.  Alternatively, we note that allegations of verbal harassment are insufficient to support a § 1983 claim.  *See Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) ("To the extent that the complaint can be read to assert an Eighth Amendment cruel and unusual punishment claim . . . based on alleged verbal harassment of plaintiff, such conduct is not actionable under § 1983."); *see also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986).

Therefore, Plaintiff's claims alleging that he suffered cruel and unusual punishment from the use of excessive force should be **denied**.

### 3. Conditions of Confinement

Lastly, reading Plaintiff's Amended Complaint liberally, he claims that he suffered cruel and unusual punishment when he was transferred into a single-occupancy cell at Upstate Correctional Facility, in contrast to the double-occupancy cell he enjoyed at Greene. Am. Compl. at ¶ 95. He complained to Defendants Botsford, D. Uhler, Leclerc, and Caron about his housing, but Defendants failed to provide Plaintiff with an adequate explanation of his current situation. *Id.* at ¶¶ 96-97.

As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). Thus, "[c]onditions of confinement only constitute an Eighth Amendment violation if they involve the deprivation of a single identifiable human need or denial of the minimum civilized measure of life's necessities, and the defendants' state of mind was one of deliberate indifference to that deprivation." *Johnson v. Smith*, 2006 WL 1843292, at *9 (N.D.N.Y. June 29, 2006). The Eighth Amendment does not "mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and "only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation[,]" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. at 347).

Besides the fact that his cell in Upstate Correctional Facility houses only one inmate, Plaintiff provides this Court with no other details by which we could evaluate the conditions of his confinement. Confinement in a single-occupancy cell by itself does deny an inmate the minimal civilized measure of life's necessities. Accordingly, to the extent Plaintiff alleges his single-occupancy cell at Upstate violates his rights under the Eighth Amendment, this claim should be **dismissed**.

## C. First Amendment Claims

### *1. Retaliation*

Plaintiff's Amended Complaint centers around his allegation that the Defendants retaliated against him for filing grievances.  *See* Am. Compl. at ¶¶ 76-77.

In order to state a valid retaliation claim, a plaintiff must allege that "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).  The required causal connection means, "in other words, that the protected conduct was a 'substantial or motivating factor' in the defendants' decision to take action against the plaintiff."  *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Second Circuit has made clear that an inmate has a right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances as guaranteed under the First and Fourteenth Amendments.  *See*, *e.g.*, *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (cited in *Dorsey v. Fisher*, 2010 WL 2008966, at *12 (N.D.N.Y. May 19, 2010)); *see also Colon v. Coughlin*, 58 F.3d 865, 972 (2d Cir. 1995) ("Prisoners, like non-prisoners, have a constitutional right . . . to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right.").  Thus, there is no question that Plaintiff's conduct, filing grievances, is protected by the Constitution and satisfies the first prong of a retaliation claim.

Plaintiff's allegations – again, taken as true for the purposes of this Motion – also establish

that the Defendants took "adverse action" sufficient to state a valid retaliation claim.  He claims, *inter alia*, that correctional officers issued him false misbehavior reports,[11] that his personal property went missing, that his sick call requests were ignored, and that his prescription medicine was denied. *See* Am. Compl. at ¶¶ 78, 80-83, & 86-94.

Plaintiff does not, however, sufficiently allege a causal connection between his protected conduct of filing grievances and the Defendants' adverse actions.  While a "[a] plaintiff may assert [a] causal connection through allegations of retaliatory animus, or else by circumstantial evidence, such as close temporal proximity between the protected activity and the retaliatory action," Plaintiff here does neither.  *Perry v. State of New York Dep't. of Labor*, 2009 WL 2575713, at *6 (S.D.N.Y. Aug. 20, 2009).  He offers no facts suggesting that any of the acts he complains about were prompted in any way by his grievances.  *See*, *e.g.*, Am. Compl. at ¶¶ 85-100 (describing the harassment from "Upstate staff" Plaintiff experienced "almost instantly" after his transfer, such as having to reside in a single-occupancy cell, or having his sick call requests denied, but failing to allege anything about the Defendants at Upstate knowing of and having a retaliatory animus about the grievances Plaintiff filed at Greene Correctional Facility).  His conclusory statements alone, such as that "[Plaintiff] contends that this [adverse action] was the result of retaliation," fail to adequately provide this Court any factual specifics by which we could evaluate the plausibility of his claims. *See id.* at ¶ 83.  We are unwilling to assume a casual connection here when the facts indicate no such relationship.  Thus, because Plaintiff failed to provide facts sufficient to raise an inference that the

---

[11] While a "prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report," *see Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997), a misbehavior report issued in retaliation to the exercise of a constitutional right constitutes an "adverse action."  *See Reid v. Bezio*, 2011 WL 1577761, at *4 (N.D.N.Y. Mar. 30, 2011) ("[T]here is little doubt that a misbehavior report would constitute an adverse action.") (internal quotations omitted).

adverse action was caused by retaliatory animus, his retaliation claim should be **dismissed**.

### 2. Access to the Courts

Melecio asserts that an unknown officer did not provide him with the legal materials he requested from the law library.  Am. Compl. at ¶ 66.  We interpret these facts to allege a violation of his right to access the courts.

The Supreme Court has held that the constitutional right of access to courts entitles plaintiffs to "adequate law libraries or adequate assistance from persons trained in the law."  *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  To establish a *Bounds* violation, a plaintiff must show "actual injury," as "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance."  *Lewis v. Casey*, 518 U.S. 343, 349 & 351 (1996).  Thus, to establish a claim of inadequate access to the courts under *Bounds*, a plaintiff must show "'that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim' – for example, by demonstrating that he has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality."  *Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001) (citing *Lewis v. Casey*, 518 U.S. at 351).

Plaintiff fails to allege any prejudice or injury from this unidentified officer's actions, and we find none in what has been presented to the Court.  Without a demonstration that a "nonfrivolous legal claim had been frustrated or was being impeded," there is no basis to conclude Plaintiff's First Amendment right of access to the courts has been violated.  *Lewis v. Casey*, 518 U.S. at 353.  We recommend that this claim be **dismissed**, pursuant to 28 U.S.C. § 1915A.  *See supra* Part II.B.2.

### D. Personal Involvement

It is well settled that the personal involvement of a defendant is a prerequisite for the

assessment of damages in a § 1983 action.  *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.

1977).  Furthermore, the doctrine of *respondeat superior* is inapplicable to § 1983 claims.  *See Polk*

*County v. Dodson*, 454 U.S. 312, 325 (1981) (internal citations omitted); *Colon v. Coughlin*, 58 F.3d

865, 873 (2d Cir. 1995).  Thus, a defendant may not be liable for damages simply by virtue of

holding a supervisory position.  *See*, *e.g.*, *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Rather,

the personal involvement of a supervisory defendant may be shown when:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d at 873.[12]

Plaintiff brings a variety of claims against Defendants seemingly for holding a supervisory

position alone.  In his Amended Complaint, Plaintiff claims that Defendant Doctor S. Smith failed

to "immediately resolve the matter" of other Defendants' failure to respond to Plaintiff's request for

the medication Naprosyn.  Am. Compl. at ¶¶ 49-54.  He claims that Defendant Mailroom clerk Jane

Doe failed "to respond or otherwise address" Plaintiff's complaint that his mail was "being delayed."

*Id.* at ¶¶ 64-65.  He claims that Defendant Fischer, as the Commissioner of the New York State

Department of Corrections and Community Supervision ("DOCCS") failed to "intervene on

[P]laintiff's behalf" after Plaintiff wrote to him about the harassment he experienced .  *Id.* at ¶¶ 67-

68.   Plaintiff also wrote to Defendants McKoy, Graziano, Dirie, and Dough regarding his

---

[12] Several lower courts have struggled with the impact *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) had upon *Colon*, and specifically whether *Iqbal* calls into question certain prongs of the *Colon* five-part test for supervisory liability.  *See Sash v. United States*, 674 F. Supp. 2d 531, 543 (S.D.N.Y. 2009) (collecting cases).  Because the Second Circuit has not yet issued a decision settling this matter, *Colon* remains good law.

complaints, but they "did nothing more than generate denials from the staff involved." *Id.* at ¶¶ 70-71.  Plaintiff claims that Defendants Krom, the inmate accounts clerk, and Defendants K. Apple, the business office clerk, "made no effort to address the matter" that Plaintiff complained to them about, that he was overcharged for making copies. *Id.* at ¶¶ 72-73.  He also wrote to Defendant Nurse Administrator Nancy Smith to complain that his requests for attention on sick call at Upstate were being ignored, to which Plaintiff received an unsatisfactory response. *Id.* at ¶¶ 88-89.  Finally, Plaintiff complained to Defendants Bostford, D. Uhler, Roxanne Leclerc, and Trudy-Lyn Caron about his housing in a single-occupancy cell at Upstate, but Plaintiff found their responses likewise inadequate. *Id.* at ¶¶ 96-97.

These allegations all fail to allege that the Defendants were personally involved in any of the alleged constitutional violations Plaintiff complains about.  Plaintiff states no direct participation by the Defendants in the violations, that the Defendants' policies allowed the continuance of constitutional violations, nor that the Defendants were negligent in their supervision of subordinates.  Furthermore, a defendant's receipt of, and responses to, letters or complaints alone is insufficient to find the requisite personal involvement. *See Goris v. Breslin*, 402 F. App'x 582, at *1 (2d Cir. 2010) (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)).  Therefore, because Plaintiff fails to allege any facts indicating these Defendants' involvement in the alleged wrongdoing, his claims should be **dismissed**.

Additionally, Plaintiff claims that Defendant Jerry Janiec, the inmate grievance supervisor, "used his office to thwart the fair resolution of [Plaintiff]'s claims by avoiding accessing the information that would substantiate his claims."  Am. Compl. at ¶ 74.  This conclusory statement is wholly devoid of any factual detail by which this Court could examine Plaintiff's claim.

Accordingly, Plaintiff's claim against Defendant Janiec fails to state a claim and should be **dismissed**.

Plaintiff also claims that Defendant Whiteash packed up his personal property in his cell for a transfer from Greene to Upstate Correctional Facility, and his additional property was lost despite being in a bag that had Plaintiff's name on it.  *Id.* at ¶¶ 79-83.  However, Plaintiff alleges no constitutional violation here, such as a retaliatory motive or that the deprivation was of Plaintiff's legal materials.  Thus, without the requisite showing of personal involvement in a constitutional violation, Defendant Whiteash should be **dismissed** from this action.

Lastly, Plaintiff names in his Amended Complaint Defendants Wilhelm, Hammond, Lucas, Ramirez, Leonardo, June, Vincent, Bunch, Gonzalez, Murphy, Mahon, Adams, the Inspector General, and Iarusso.  However, Plaintiff does not state any facts or claims against these Defendants whatsoever.  Because Plaintiff failed to include any allegations against these Defendants, he fails to state a claim upon which relief could be granted, and, accordingly, they should be **dismissed** from this action.

## III.  CONCLUSION

While this Court recognizes the Second Circuit's preference to provide *pro se* plaintiffs with leave to amend their pleadings prior to dismissal, Melecio has already been afforded the opportunity to amend his Complaint.  In light of the discussion herein, providing Plaintiff another opportunity to amend would be futile.

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 46) be **GRANTED** and Plaintiff's Amended Complaint (Dkt. No. 35) be **DISMISSED**; and it is further

**RECOMMENDED**, that Plaintiff's claims again Defendant Horner and all unidentified Defendants the unidentified law library officer be **DISMISSED**, pursuant to 28 U.S.C. § 1915A, for failure to state a claim; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:    September 27, 2011
         Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-21-*